# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AUREEN BERRY | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 09-cv-8076 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| FORD MODELING AGENCY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's objections [93] to Magistrate Judge Mason's June 1, 2011 order [91] awarding Defendant $1,837.70 in fees and costs incurred as a result of Plaintiff's refusal to cooperate in discovery. Plaintiff argues that the sanctions imposed are excessive, that she cannot afford to pay, and that they should be vacated or substantially reduced. For the reasons stated below, the Court respectfully overrules Plaintiff's objections [93] and upholds Judge Mason's order [91].

**I.  Background**

Aureen Berry ("Plaintiff") filed a complaint against Ford Modeling Agency, Inc. ("Defendant"), alleging violations of the Illinois Right to Publicity Act, 765 ILCS 1075/1, *et seq*. Plaintiff had worked as a model for Susanne's A-Plus Talent ("Susanne's"), an agency that subsequently was purchased by Defendant. Plaintiff claims that Defendant commercially published images from a prior photoshoot with Susanne's and Chade Fashions, Inc. ("Chade") without Plaintiff's consent, in violation of the Act. Plaintiff claims that in publishing her image, Ford engaged in 15,233,301 unauthorized uses, and thus Plaintiff seeks almost $8 billion in damages.

Plaintiff had previously filed suit in state court against Chade, the company that manufactured the product on which her image purportedly appeared. Plaintiff alleged that Chade had engaged in similar violations of the Act. See *Berry v. Chade Fashions*, 890 N.E.2d 1239, 1242 (Ill. App. Ct. 2008). On June 30, 2008, the Appellate Court of Illinois reversed the trial court's entry of partial summary judgment in Berry's favor, vacated the $1,000 damage award, and affirmed the trial court's ruling on directed verdicts in Chade's favor. *Id.* at 1243.

After Plaintiff filed her complaint against Defendant, Defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted [7], arguing that in light of the prior *Chade* litigation, Plaintiff's claims were barred by the affirmative defense of collateral estoppel. The Court concluded that Plaintiff had not pled herself out of court, and thus issued a written opinion [14] denying the motion to dismiss.

The case was then referred to Magistrate Judge Mason's calendar for discovery motions and discovery supervision. Because discovery has not gone smoothly, Judge Mason has been asked to make several rulings, including the order to which Plaintiff has objected. On October 8, 2010, Defendant filed its first motion to compel [19]. This motion was filed in response to Plaintiff's refusal to comply with Defendant's request that Plaintiff produce documents regarding the *Chade* litigation and provide information about the purported unauthorized use of her image. Plaintiff had refused to provide this information, arguing that because Defendant had moved to dismiss the suit under a theory of collateral estoppel, Defendant had essentially admitted that the prior suit had provided it with all the required information to successfully defend itself.

Before the parties had completed briefing on the October 8 motion to compel, Defendant filed a second motion [33], October 25, 2010, requesting that the Court compel Plaintiff to answer deposition questions and impose monetary sanctions. This motion was filed in response

2

to Plaintiff's behavior during her October 20, 2010 deposition, in which she repeatedly refused to answer basic factual questions about the case, claiming they were irrelevant. Plaintiff responded on October 29, 2010 with her own motion to compel Defendant to provide supplemental responses to interrogatories and produce requested documents [37]. On December 6, 2010, Judge Mason denied Plaintiff's motion, and granted Defendant's motions in part, directing Plaintiff to provide supplemental discovery responses and sit for another deposition, but declining to impose monetary sanctions (see [57]). In his December 6, 2010 order, Judge Mason specifically instructed Plaintiff that she was not permitted to refuse to answer questions at her deposition on relevance grounds.

Unfortunately, Plaintiff did not heed Judge Mason's order, and on January 5, 2011, defense counsel contacted the chambers of Judge Mason by phone, explaining that Plaintiff was again refusing to answer basic questions during her deposition (including basic background questions and questions regarding a written contract at issue). Over the phone, Plaintiff was admonished for her behavior and reminded that she did not have a right to question the relevancy of the questions. However, Plaintiff's uncooperative behavior continued for the remainder of the January 5 deposition, as well as in parts of the January 7 continuance.

In response to Plaintiff's failure to cooperate, on January 19, 2011 Defendant filed a motion for sanctions [66] against Plaintiff, requesting both that the court impose monetary sanctions and that it dismiss the complaint. On April 25, 2011, Judge Mason denied Defendant's request for case-terminating sanctions, but granted its motion for monetary sanctions [84]. Judge Mason ordered Defendant to submit a fee petition detailing the costs that it incurred during and in preparation for the January 5 deposition. [84.] Defendant did so. [89.] Plaintiff then filed an

objection to the fee petition [90], in which she argued that Defendant's requested fees were unreasonable and that she could not afford to pay sanctions.

On June 1, 2011, Judge Mason granted Defendant's petition in part [91], ordering Plaintiff to pay $1,837.70 in fees. In the Court's order, Judge Mason considered each of Plaintiff's objections to the amount of fees, including Plaintiff's "unsupported assertion that she is unable to pay." [91, at 1.] Plaintiff now appeals that order [93], claiming that she cannot afford to pay $1,837.70, and arguing that the Court should vacate Judge Mason's imposition of monetary sanctions, or, in the alternative, that the allegedly excessive sanctions should be reduced to $50.

## II. Standard of Review

Because the monetary sanctions imposed by Judge Mason punishing Plaintiff for impeding the January 5, 2011 deposition are not case dispositive, Fed. R. Civ. P. 72(a) provides the appropriate standard of review. See, *e.g.*, *Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 WL 290308, at *10 (N.D. Ill. Mar. 20, 2001). Under this standard, a magistrate judge's ruling will be set aside only if it is "clearly erroneous or contrary to law." *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006); see also *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) (holding that under the clear error standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made").

## III. Analysis

The Court concludes that Judge Mason's decision to impose sanctions in this situation, and the amount of sanctions that he imposed, are not "clearly erroneous or contrary to law," *Hall*, 469 F.3d at 595, and thus Plaintiff's objections are overruled. Federal Rule of Civil

Procedure 30(d)(2) provides that "the court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Judge Mason did exactly that—after Plaintiff ignored prior warnings, Judge Mason determined that Plaintiff's behavior had impeded the January 5, 2011 deposition and ordered her to pay a portion of Defendant's attorney's fees associated with that deposition.

Plaintiff does not object to the fact that Judge Mason imposed sanctions on her. Rather, she takes issue with the amount of sanctions imposed. First, Plaintiff argues that she cannot afford to pay $1,837.70. However, Judge Mason has already considered and rejected Plaintiff's claim that she cannot afford to pay. In granting Defendant's petition for fees, Judge Mason explained that under Federal Rule of Civil Procedure 37(b)(2), the burden is on the disobedient party to demonstrate that he or she cannot afford the sanctions. Despite Plaintiff's claims to the contrary, Judge Mason was not "reading this requirement into" Rule 37. Rather, the advisory committee notes clearly state that "the provision places the burden on the disobedient party to avoid expenses by showing * * * that special circumstances make an aware of expenses unjust." Plaintiff offered no evidence before Judge Mason to substantiate her claim that she cannot afford to pay the ordered sanctions, and she offers none here. Instead, Plaintiff asks the Court to "take judicial notice that Plaintiff is a *pro se* litigant and financially unable to pay." While it is true that Plaintiff is *pro se*, it does not follow that she cannot afford to pay the ordered sanctions. Plaintiff has not filed a motion for *in forma pauperis* status or otherwise substantiated her claims of penury.[1]

---

[1] Plaintiff further criticizes Judge Mason's decision to impose sanctions by specifically questioning his reliance on *Royal Maccabees* for the proposition that sanctioned parties are responsible for demonstrating their inability to pay. See *Royal Maccabees Life Ins. Co.*, 2001 WL 290308, at *12 (citing advisory

In addition to claiming that she cannot afford to pay the sanctions ordered by Judge Mason, Plaintiff proposes that an alternative sanctions amount, $50, be imposed. Plaintiff submits that sanctions of $50 were first proposed by this Court during the proceedings held on May 3, 2011 [93, at 2]. Indeed, Plaintiff quotes the Court as stating "I mean he [Judge Mason], could sanction you 50 bucks or he could sanction you 5,000. I don't know what he is going to do. And that's entirely up to him in the first instance." [93, at 3.] Plaintiff has misinterpreted the Court's purpose in making that statement. The Court was not proposing $50 as a potentially appropriate sanction, but instead was explaining the sanctions procedure to Plaintiff and using abstract, hypothetical amounts ($50 and $5,000) as mere examples. In fact, until Plaintiff filed her objections to Judge Mason's sanctions order, this Court had only a very general notion of the circumstances giving rise to the sanctions issue and would not have had any basis for opining in any fashion on whether any monetary sanction was appropriate in this case—and, if so, in what amount.

Plaintiff also attempts to distinguish her conduct from that of sanctioned parties in similar cases where a party failed to provide discovery. Plaintiff argues that these differences demonstrate that the sanctions imposed by Judge Mason are "unduly harsh" [93, at 8]. The Court disagrees. If anything, the cases cited by Plaintiff confirm a court's discretion to sanction parties for engaging in conduct similar to Plaintiff's. Plaintiff complains that she is "being sanctioned for going against one order during one deposition" whereas other parties incurred

---

committee's notices to Rule 37(b)(2) and noting that it is the disobedient party's burden to prove inability to pay). Plaintiff claims that *Royal Maccabees* is a "controversial case." [93, at 4.] (citing *Marquez v. City of Phoenix*, 2010 WL 1692255 (D. Ariz. Apr. 23, 2010)). However, Plaintiff misreads *Marquez*. *Marquez* does not criticize *Royal Maccabees*, but rather distinguishes the situation in *Royal Maccabees*, where monetary sanctions were proposed to punish a party who failed to comply with discovery, from *Marquez*, in which the proposed sanction was striking Plaintiff's experts. *Id*. at *1. In any event, even if *Marquez* and *Royal Maccabees* are at odds, neither case is binding on this Court.

6

sanctions only after disobeying numerous orders. See, *e.g.*, *Royal Maccabees*, 2011 WL 290308, at *7. But there is no grid from which courts may determine an appropriate sanction, if any, based on the number of disobeyed orders and the number of depositions interrupted. Sanctions must be tailored to the specific circumstances of a case. Here, in his opinion imposing sanctions, Judge Mason observed that in addition to her behavior during the January 5 deposition, Plaintiff also failed to cooperate during the October 20, 2010 deposition and previously had refused to hand over several requested documents. In short, Plaintiff has failed to cooperate in discovery on numerous occasions, and has ignored repeated warnings to adhere to the rules and the Court's directives.

Plaintiff also argues that the "$1,837.70 fee is unreasonable and excessive" [93, at 6] because she is being forced to pay for redundant activities and unnecessary expenditures. However, Judge Mason already has reduced the amount of the sanction to ensure that it included only necessary expenditures associated with the January 5, 2011 deposition. Plaintiff cites *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999), for the proposition that redundant fee hours should not be charged, and that is precisely the issue that Judge Mason addressed when he reduced the sanction from the amount requested by Defendant ($3,379.70) to the amount reflected in the June 1 order ($1,837.70). Specifically, Judge Mason disallowed the 1.9 hours of time Mr. Baravetto spent preparing for the deposition, noting that because Mr. Baravetto had thoroughly prepared for the October 20, 2011 deposition one hour was a more reasonable amount of time to spend refreshing himself for the continued deposition.

Plaintiff also argues that the rate of $335 per hour is excessive pay for Mr. Baravetto, who graduated from law school five years ago. However, the Court agrees with Judge Mason that $335 per hour is reasonable. To determine an attorney's reasonable hourly rate, courts look

7

to the "market rate" for the work performed, meaning "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon*, 175 F.3d at 554-55. The burden of proving the market rate is on the party seeking attorneys' fees. *Id.* at 554. "[O]nce the attorney provides evidence establishing his market rate, the burden shifts to the [opposing party] to demonstrate why a lower rate should be awarded." *Id.* at 554-55. Because "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him," an attorney's actual billing rate is "presumptively appropriate" for use as the market rate. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) (citations omitted). In its fee petition, Defendant claims that Mr. Baravetto's billing rate is "consistent with the prevailing hourly rates in Chicago, Illinois." [89, at 2.] Furthermore, Defendant stresses that "as evidence of the reasonableness of these rates, Ford has paid bills for the legal services rendered at these hourly rates." [89, at 2.] The Court sees nothing unreasonable about the rate of $335 per hour that Mr. Baravetto charged in this matter. See *Holmstrom v. Metro. Life Ins. Co.*, 2011 WL 2149353 (N.D. Ill. May 31, 2011) (approving $375 per hour for a sixth-year associate); *Entm't Software Ass'n v. Blagojevich*, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006) (approving $340 per hour for a sixth-year associate). Defendant's counsel made a *prima facie* showing that their rates were reasonable, and Plaintiff has presented no evidence that Mr. Baravetto's rates are out of line for a lawyer of his skill and experience. *Spegon*, 175 F.3d at 554-55.

Finally, Plaintiff argues that her sanctions should not include fees to pay the court reporter hired for the January 5, 2011 deposition, because the Supreme Court has held that sternographers "must be paid by private arrangement * * * the amount paid to him [or her] is not costs in the cause nor taxable as such against any of the parties." *Miller v. U.S.*, 317 U.S. 192,

198 (1942). However, *Miller* is easily distinguishable from the case at hand. In *Miller*, the indigent defendant was requesting a transcript of the stereographically-recorded testimony from his trial for kidnapping. The court ruled that there exists no legislation requiring that the government provide free transcripts to indigent defendants. Clearly, *Miller* does not resolve the issue of whether a disobedient party may be required to pay court reporter fees as a sanction for the party's misconduct at a deposition. In fact, stenographer's fees are routinely collectable as costs (see 28 U.S.C. § 1920), and Judge Mason's decision to include the court reporter fees within the scope of his sanction was sensible given the close nexus between the additional costs imposed on Defendant and Plaintiff's sanctionable conduct.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's objections [93] are overruled and Magistrate Judge Mason's June 1, 2011 order [91] is affirmed.

Dated: August 18, 2011

_____

Robert M. Dow, Jr.
United States District Judge